MILLS *v.* MILLER.

## Mills v. Miller.

PRACTICE. If a defendant's demurrer to a petition be overruled, and he answer, he thereby waives his exception to the order.

——: *Final order in partition.* A judgment in partition made upon report of referees that the property cannot be divided, and directing a sale, and a report of the referees in making the sale, but reserving the confirmation and making of deeds to the purchaser until the coming-in of the report, is not so far final as to support an appeal to the Supreme Court.

——: *If, in partition,* judgment be entered after a demurrer to the answer has been sustained, and it recite that it is rendered on the pleadings, there is no error which this Court can notice.

    1. No proof of title is necessary to make out the plaintiff's case.

    2. The recital does not exclude the supposition that due proof to support the petition was made.

    3. The error was one which should have been corrected below; or an application made in that behalf, and overruled, should be shown.

MISTAKE: *Of fact.* If two parties claim property adversely, and the subject is in litigation, and they come to an agreement in respect of their rights without fraud on the part of either, beyond the representation by one that he owns the property, the other, after a judicial decision in favor of his claims, cannot avoid the compromise.

——: *Of law.* Ignorance of law will not excuse, unless accompanied by special circumstances.

    This was a petition in error to review proceedings in partition, had in the District Court for Douglas County.

    To the petition filed in the District Court the defendant answered, setting up that the interest claimed by the

Mills *v.* Miller.

plaintiff in the premises was derived by him without any consideration; that the defendant had alone negotiated for and purchased the premises, and paid for the same; but that the plaintiff represented and pretended that one Lorin Miller (who was his father) had a title, either in law or equity, to the said premises, and would recover the same in an action then pending therefor; that the defendant, relying upon said representation, consented that the conveyance which was to be made of said premises should run in the name of both the said parties jointly, in consideration that the said Lorin Miller would quitclaim to said parties all his right, title, and interest in the said premises; which was done. But it is alleged in the answer, that the said Lorin Miller had no title, either in law or equity, to said premises, as the final adjudication of the action then pending determined; and that, by reason thereof, the conveyance to plaintiff by defendant's vendor was entirely without consideration, and was assented to by defendant under a mistake as to the rights of the parties in the premises; and the relief sought by the answer is, that the interest held by the plaintiff by virtue of said conveyance may be ordered to be so held in trust only for the defendant herein, and that the said plaintiff may be ordered to convey the same to the defendant.

To this answer the plaintiff interposed a general demurrer, by which every fact stated in the answer is admitted to be true. The demurrer was sustained by the Court below, and a judgment for partition entered upon the pleadings alone, and a reference for an account to be taken of rents and profits, &c.

The referees reported that the premises could not be divided, and recommended that the same be sold. Their report was confirmed; and they were directed to sell the premises, and report their proceedings upon the sale to

the Court for its examination. At this point the defendant arrested the proceedings by this petition in error and his *supersedeas* bond.

*G. W. Doane,* for plaintiff in error.

I. The demurrer to the answer ought to have been overruled, because the facts stated were a good defence to the petition.

1. The misstatements of the plaintiff as to Lorin Miller's title, whether known to him to be untrue or not, were in fact false, as the final determination of the Court proved. They therefore misled the defendant, and entitle him to relief.

2. This was not a case of mutual concession of rights for the sake of peace; for there was no controversy between these parties whatever, and none to which they, or either of them, were parties: so that their adjustment had no effect, and could have none, upon the then pending litigation between the father of the defendant, Lorin Miller, and other parties. This was simply the case of a misrepresentation, made under a mistake, it may be, of rights, whereby one party has been induced, without any consideration whatever, to admit another into a conveyance. Can it be, that, after the discovery of the mistake, a court will not relieve the party against the consequences of it?

It may be said that "ignorance of the law does not excuse," and that a party cannot be relieved against a mistake of law. To this I reply, 1st, That, by the allegations of the answer, it appears that the mistake was one of fact; namely, that Lorin Miller had some title, either in law or equity, to the premises, and would recover the same in an action then pending. The case presented by the answer is just this: An entire stranger

MILLS *v.* MILLER.

to the title comes to the purchaser and holder of the legal title, and represents to him that a third person has the better title, and will recover the property, and thereby induces the real owner to convey to him, the stranger, an undivided equal interest in the property, upon condition that the intruder, the pretended holder of the title, shall quitclaim his pretended interest to the said parties jointly. Subsequent adjudication develops the fact, that the third person had no title whatever. This, then, was a simple mistake of fact as to the defendant; although it may have been a mistake of law as to the plaintiff, and the one pretending to hold the title. Now, what consideration passed from the plaintiff to the defendant for the interest which he is now endeavoring to enforce ? None whatever. It was not a compromise of doubtful rights; for the plaintiff had no rights to compromise. Neither was any litigation ended or prevented by it; for the answer shows that the litigation then pending between Lorin Miller and other parties, in which the question of the title to this property was involved, went on to final judgment. The plaintiff intruded himself into the title without paying any consideration therefor, or returning to the defendant any benefits whatever for the interest which he acquired by the conveyance obtained through, and paid exclusively by, the defendant.

2d, It is not a universal rule, that mistakes of law cannot be relieved against. The instances of relief being afforded in this class of cases have been so numerous, and so many exceptions have been admitted to it in the later adjudications, that the old Latin maxim has lost much of its force as applied to civil actions. One most important exception to the rule as announced by Lord Mansfield is, that " where money is paid under a mistake, *which there was no ground to claim in conscience,* the party may recover it back." *Bize* v. *Dickason,* 1 *L. R.,*

Mills *v.* Miller.

285. The same rule would apply to a conveyance made, "which there was no ground to claim in conscience," as in this case. In *Hunt* v. *Rousmanier's Adm'r*, 1 *Peters*, 16, the Court say, " It is not the intention of the Court to lay it down, that there may not be cases in which a court of equity will relieve against a plain mistake arising from ignorance of law." In the same case, which came before the Court on appeal from an order sustaining a demurrer to the bill, and which is reported in 8 *Wheaton*, 174, Chief Justice Marshall, delivering the opinion reversing the decree, remarks, " We find no case in which it has been decided that a plain and acknowledged mistake in law is beyond the reach of equity ; " and in that case, while admitting that " we find no case which we think precisely in point," still says, " We are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief." In the course of delivering the opinion in the case just cited, the learned chief justice refers to the case of *Landsdowne* v. *Landsdowne*, reported in *Mosely*, 364, which was a case in which the right of the heir-at-law to an estate was contested by a younger member of the family, and by agreement referred to arbitration, and the arbitrator decided against the heir-at-law. He executed a deed in compliance with the award, and afterward filed a bill, and was relieved against his conveyance, on the principle that he was ignorant of his title. The chief justice says, " If he was ignorant of any thing, it was of the law which gave him, as eldest son, the estate he had conveyed to a younger brother." In what respect does that differ in principle from this case, except that in this case there are none of the considerations of preserving family peace which *might* have weighed in the other, and which have so often been controlling con-

MILLS v. MILLER.

siderations in sustaining conveyances ?    It is alleged
in the answer, and admitted by the demurrer, that the
defendant acted under a mistake as to his rights in the
premises, and as to the rights which Lorin Miller had
therein, *and that that mistake was created and fostered by
the assertions of the defendant as to Lorin Miller's title!*
This is stronger than either the case of *Hunt* v. *Rous-
manier*, or that of *Landsdowne* v. *Landsdowne*, cited above.
In the latter case, the Lord Chancellor (King) is reported
as saying, "that the maxim, *ignorantia juris non excusat*,
was in regard to the public, — that ignorance cannot be
pleaded in excuse of crimes, — but did not hold in
civil cases."

"Private right of ownership is matter of fact; it
may be the result, also, of matter of law : but, if parties
contract under a mutual mistake and misapprehension
as to their relative and respective rights, the result is,
that that agreement is liable to be set aside as having
proceeded on a common mistake."    *Cooper* v. *Phibbs*,
15 *W. R.*, 1053.

"If a party, acting in ignorance of a plain and settled
principle of law, is induced to give up a portion of his
indisputable property to another under the name of
' compromise,' a court of equity will relieve him from
the effect of his mistake."    *Naylor* v. *Winch*, 1 *Sim. &
Stu.*, 555.    In *Brigham* v. *Brigham*, 1 *Ves. Sen.*, 126,
the plaintiff had purchased an estate which already be-
longed to him under a mistake of law ; and the Court
ordered the defendant to refund the money, holding
that "there was a plain mistake, such as the Court was
warranted to relieve against."

In *Pusey* v. *Desbouvrie*, 3 *P. Wms.*, 315, a daughter
made her election to accept a legacy in lieu of her
orphanage part in the estate.    It appeared very clearly
that she did this under a mistake as to her legal rights :

MILLS v. MILLER.

and Lord Chancellor Talbot said it seemed hard that she should suffer for her ignorance of the law; or that the other side should take advantage of that ignorance; and ruled accordingly.

II. The other errors assigned in the petition are upon questions of practice, a portion only of which will be noticed.

1. Judgment for partition and for an account was given upon the pleadings only.

The Partition Act, sect. 809, provides that "each of the parties, plaintiff and defendant, must exhibit his documentary proof of title, and must file the same, or copies thereof, with the clerk." This is the evidence upon which alone an order of partition is authorized to be made; and the evidence is required to be placed with and remain among the files. This was not done in this case; but the judgment was rendered, as the entry shows, upon the pleadings alone. The rule of the Code, that all the allegations of the petition not denied by the answer are to be taken as true, does not apply to this kind of special statutory proceeding: and sect. 810 indicates the cases in which the statements of the petition shall be taken as true; namely, when not contradicted by the answer *or by the documentary proofs exhibited as required.* This shows clearly that the documentary proof cannot be dispensed with by any allegations in either petition or answer.

2. That the order of sale was made before an account had been taken of rents and profits, receipts and disbursements, by the said parties on account of the said premises. The petition states that Mills has received the rents of the premises, and has expended certain amounts in improvements and "advances," and asks for an account. If an account is to be taken, is it not equitable and proper that the account should have been

taken before the parties were required to determine the bids which they would make upon the property, and especially before the plaintiff should be subjected to the possibility of being dispossessed of his improvements and property under the sale, when it might turn out by the account that there was a large balance in his favor, for which he would be entitled to be reimbursed out of the use of the property? If a sale is made, it follows, under the finding of the Court, that each party is entitled to a moiety of the proceeds. This distribution being made, as the parties have the right to insist it shall be after the sale, what security has either party for the balance which may be found due to him upon the account being taken? He has no lien, of course, upon the property, for the purchaser takes the title of both parties; whereas, if the account was first taken, the lien of either party would remain until the sale, and would be then transferred to the fund. This is the universal rule in equity; and this case is to be governed by the ordinary rules obtaining in courts of equity.

3. The sixth, seventh, and eighth grounds of error assigned in the petition can be considered together.

They all call in question the regularity of providing in the order of sale for the performance of those acts which can only follow the sale and its confirmation, such as the execution of a deed to the purchaser, and that the sale and conveyance shall be valid and effectual forever; that the purchaser be let into possession, and that any person in possession at the time shall deliver possession to the purchaser on production of the referee's deed, &c. All these acts can only follow the confirmation of the sale; and there is no authority for making such an order until the sale has been duly reported to the Court, the proceedings by the referees found to

MILLS *v.* MILLER.

be regular and in accordance with law and the order of Court, and the confirmation ordered. This is to anticipate that a sale has been regular in advance of its being made.

*G. J. Gilbert* and *A. Swartzlander*, for defendant in error.

I. The answer sets up no legal or equitable defence.

1. The petition shows that the parties are tenants in common, with equal interests in the premises, and that Mills is largely indebted to Miller for rents. The answer, not denying these allegations, sets out that the parties hold by two deeds, — one from Merritt, and the other from Lorin Miller, who originally claimed adversely to each other, Mills holding the deed from Merritt, Miller the deed from Lorin Miller.

2. No fraud, misrepresentation, or concealment, is charged in the answer. Mills's means of knowing what would be the "*final adjudication of the action then pending, in which the said title was involved,*" were the same as those of Miller. It appears that Mills preferred to act upon his own belief and judgment, rather than to remain longer in uncertainty as to what would be the ultimate judgment of the Court. All the terms of the compromise are fulfilled on both sides, which results in a mutual settlement of all controversy respecting the title. Had the "*action then pending*" been decided otherwise than it was, and adversely to the title derived from Merritt, the defendant Miller would have no cause of complaint against Mills because the consideration on his side had failed. Both were equally liable to be mistaken as to the "rights of the parties in said premises;" and the Court cannot now relieve either party from the consequence of such liability.

II. In support of the ruling of the Court below in sustaining the plaintiff's demurrer, the current of authorities is entirely uniform.

1. The prevention of litigation is not only a sufficient but a highly-favored consideration ; and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties thought at the time that there was a question between them. 1 *Parsons on Contracts*, 364; 4 *Met.*, 272; 14 *Cow.*, 12; 5 *Watts*, 259 ; 3 *Hill*, 504.

2. It matters not if the inducement on one side proves wholly worthless. 3 *Hill*, 504; 4 *Met.*, 270.

3. When parties meet on equal terms, and adjust their differences, both are concluded from any further litigation of the matter. 4 *Denio*, 189 ; 7 *Mich.*, 133.

4. The settlement of a doubtful claim or a legal controversy is a good consideration. 2 *Mich.*, 145; 7 *id.*, 127 ; 8 *id.*, 37; 2 *Penn.*, 531; 12 *Wend.*, 381.

III. A suit for partition does not embrace the object of adjusting adverse titles and encumbrances. 9 *Cowen*, 344.

IV. The proceedings were regular. The defendant was allowed to amend his answer, but neglected to do so ; and the cause rightly proceeded without answer.

V. The directions in the order of sale were proper ; and it is to be presumed that the referees will execute the order according to law.

Crounse, J.

It was quite useless to insert in this record the demurrer to the petition and the order of the Court overruling it. By answering, the defendant lost the benefit, if any, of his exception to the order. *Brown* v. *Saratoga*

MILLS v. MILLER.

*R. R. Co.*, 18 *N. Y.*, 495; *Campbell* v. *Wilcox*, 5 *West. Jurist*, 208; *Cleaswater* v. *Meredith*, 1 *Wal.*, 42; *Aurora City* v. *West*, 7 *id.*, 92; *Young* v. *Martin*, 8 *id.*, 354.

Sect. 582 of the Code, in defining what may be reviewed, says, —

" A judgment rendered or final order made by the District Court may be reversed, vacated, or modified by the Supreme Court for errors appearing on the record." No final order has been made in the case. The object of the action is to obtain partition between the parties of the premises described. Among the first of the orders made is that sustaining a demurrer to the defendant's answer. This is followed by the Court declaring the interest of the respective parties, and the appointment of referees, as provided by the statute, to make division accordingly. They are to report whether actual partition can be made. To this defendant's counsel excepts generally. The referees, reporting that actual partition cannot be made, are, by a further order of the Court, directed to sell in a manner pointed out in the order: and, while the order contains that which might have been reserved on a subsequent or final order of the Court, they are required to report their proceedings under this order of sale; and, if confirmed, deeds are to be made to the purchaser of the premises. The record does not disclose whether any sale has been made. If it had been made, it might not have been confirmed: exception to some of the proceedings had in the sale might be taken, which would form the proper subject of review here. So, whatever may be our determination upon the record before us, we may be called on to pass upon those questions liable to arise subsequent to the proceedings as disclosed in the record here. *Clestes* v. *Gibson*, 15 *Ind.*, 10; *Cook* v. *Knickerbocker*, 11 *id.*, 230; *Hunter* v. *Hunn*, 25 *Miss.*, 349; *Ivory* v. *Delone*, 26 *id.*,

## MILLS v. MILLER.

505; *Gates* v. *Salmon*, 28 *Cal.*, 230 ; *Peck* v. *Vanderberg*, 30 *id.*, 11.  This objection might be regarded as decisive of the case, although not urged by counsel, as consent cannot impose upon the Court the duty of passing on a case not provided for by statute, — one which might come again before us at no distant day.  *Mabry* v. *Dickrey*, 31 *Ala.*, 243.

Notwithstanding several exceptions appear from the record to have been taken, nevertheless, for reasons hereinafter stated, but one presents any question for our consideration.  This is the exception taken by defendant to the order of the Court sustaining the demurrer to defendant's answer ; and, inasmuch as it was not relied on in the argument, it may be briefly noticed and disposed of.

The answer, in substance, avers that these parties derived title from Merritt, and one Lorin Miller, father of the plaintiff, at a time when said Merritt and Miller were in litigation respecting it.  Miller paid to Merritt six hundred dollars, who quitclaims his interest to Mills and Miller, the parties here ; while Lorin Miller does the same with respect to his interest.  Subsequent to this arrangement, the Court, having before it the question as to the right of Merritt and Lorin Miller to the property, determined in favor of the former.  It is now claimed that Mills was induced to yield a joint interest in his purchase from Merritt, and accept an interest in what he believed a right of Lorin Miller, by the representations of the plaintiff that his father had a title in law or equity to the same, and under a mistake as to the rights of the parties in said premises.

There is no defence in this.  No fraud is alleged, nor does there appear any mutual mistake of facts.  The question of right to the property, as between Merritt and Lorin Miller, was before the courts for determination

when Mills purchased. What the plaintiff may have said was, at most, but the expression of an opinion as to what the courts would decide. Mills had the same means of concluding what would be the final result, and it was folly in him to rely on the declarations of Miller in the premises. Whether too impatient to await the Court's determination, or choosing not to hazard an adverse determination, the parties entered into the arrangement upon equal footing, paying the price and accepting the interest respectively that the situation justified. Either as a matter of ordinary business, or as the amicable adjustment of a thing in litigation, the transaction has the support of law. *Russell* v. *Cook,* 3 *Hill,* 504 ; *Stewart* v. *Ahrenfeldt,* 4 *Denio,* 189 ; *Barlow* v. *Ocean Ins. Co.,* 4 *Met.,* 270 ; *Gates* v. *Shults,* 7 *Mich.,* 133 ; 1 *Pars. on Con.,* 364.

Viewed as a mistake of law, the defendant's position is no better. The parties were of equal ability to enter into the agreement, and had equal facilities for determining, each for himself, the true state of the title. Either was at liberty to speculate upon the probable result of the litigation then pending ; and, from any thing that appears, each equally liable to be mistaken. With no fraud practised on him, Mills is bound by any misinterpretations of the law with respect to the true state of the title to the land purchased. *Ignorantia juris non excusat* is a maxim by which he is governed. To show that the maxim is not inflexible, and that this case should be regarded as an exception, the case *Pusey* v. *Desbouvrie,* 3 *Peere Williams's Reports,* 315, is urged upon our attention. There the daughter of a freeman of London had a legacy of ten thousand pounds left her by her father's will, upon condition that she should release her orphanage share ; and, after her father's death, she accepted the legacy, and executed the release. Upon a bill after-

wards filed by her against her brother, who was executor, the release was set aside, and she was restored to her orphanage share, which amounted to forty thousand pounds. Lord Chancellor Talbot, among other things, says, in delivering his opinion, " It is true it appears that the son did inform the daughter that she was bound either to waive the legacy given by the father, or release her right to the custom ; and, so far, she might know it was in her power to accept either the legacy or the orphanage part. But I hardly think she knew she was entitled to have an account taken of the personal estate of her father, and first to know what her orphanage part did amount to ; and that when she should be fully apprised of this, and not till then, she was to make her election ; which very much alters the case. For probably she would not have elected to accept her legacy, had she known or been informed what her orphanage part amounted unto before she waived it and accepted the legacy."

Mr. Justice Story, in commenting on this case, says, " It is apparent from this language that the decision of his lordship rested on mixed considerations, and not exclusively upon mere mistake or ignorance of law by the daughter. There was no fraud in her brother : but it is clear that she relied on her brother for knowledge of her rights and duties in point of law ; and he, however innocently, omitted to state some most material legal considerations affecting her rights and duties. She acted under this misplaced confidence, and was misled by it; which of itself constituted no inconsiderable ground for relief. But a far more weighty reason is, that she acted under ignorance of facts ; for she neither knew nor had any means of knowing what her orphanage share was when she made her election. It was therefore a clear case of surprise in

MILLS *v.* MILLER.

matters of fact as well as of law." *Story's Eq. Jur.*, sect. 118. That case is readily distinguished from the one at bar. Here the parties treated upon equal terms. All the facts surrounding the state of the title to the property in question were open to both. Neither suppressed any fact, and neither was called upon to disclose any thing to the other. For the plaintiff to declare that Lorin Miller had a title to the property was but the expression of an opinion which he was at perfect liberty to make, and was one that had warranted the employment of counsel, and defending such claim in court.

But, as covering this case more completely, Judge Redfield, in a further comment on the case of *Pusey* v. *Desbouvrie* and the observations of Justice Story above, remarks, " But we should be careful not to understand the proposition here laid down as having any just application to the subject of compromising doubtful and uncertain rights, or to the disposition of contingent or uncertain interests. In such cases, where the parties have equal means of knowledge, no relief in equity will be afforded on the ground of results being different from what the parties anticipated; for this is one of the hazards of that class of contracts which each party incurs by the very nature of the contract." *Story's Eq. Jur.*, sect. 118.

The demurrer to the defendant's answer, in my opinion, was correctly sustained; and the first assignment of error must fall. Passing to the second, it is averred " that the said Court erred in ordering partition to be made of the premises in the said petition described." Where, how, or in what respect, the Court erred, counsel has left this Court to study out. The record or brief of counsel does not make any suggestion in aid of this point. Under a petition containing all the necessary averments,

with no denial of any facts therein set out, how it is that the Court erred in ordering partition is incomprehensible to me.

The third assignment of error is, "that the said Court erred in rendering judgment for a partition of said premises, and for an account of rents and profits upon the pleadings only, after an order sustaining the demurrer of the said plaintiff to the answer of the said defendant." To this there are several answers.

First, I do not believe it necessary for the plaintiff to exhibit and file his documentary proof, or copy of same, with the clerks, as is claimed to be necessary under sect. 809 of the Code, in a case conducted as this was. The next section says, " If the statements in the petition are not contradicted in the manner aforesaid, or by the documentary proof exhibited as above required, they shall be taken as true." Here the statements in the petition were not only not contradicted, but, by the interposition of the demurrer, they were admitted to be true. Neither the sense nor the letter of the statute required the exhibition of the documentary proof. Second, It does not follow, because the journal entry recites that " this cause came on to be heard on the pleading," that no proof was taken, if any was necessary. In *Cook* v. *Hancock*, 20 *Texas R.*, p. 2, we find a judgment entry in these words : "And now come the parties by attorney and announce themselves ready for trial, and, waiving a jury, submit the cause to the judgment of the Court; and it appearing, upon an inspection of the pleadings by the Court, the Court rendered a judgment for the plaintiff, it is ordered that the plantiff recover of the defendant, A. H. Cook, the sum of $4,544.56, being the principal and interest due on the notes in controversy." The error assigned was, "giving judgment on pleadings without evidence to sustain allegations." The Court

MILLS v. MILLER.

says, "It is merely the idle and superfluous expression of the person who drew up the judgment. It was not necessary to state the facts on which it was predicated. Whether the statement, 'upon an inspection of the pleadings,' be regarded as inconsistent, or as only partial, it will not render the judgment erroneous." If it were error for the Court to order judgment upon the pleadings without the taking and filing proof as claimed, it is the duty of counsel relying on such error to show clearly that no such proof was taken. If any presumptions are to be introduced, they will rather be in support of a judgment than against it.

Third, A further answer is, that the objection is for the first time specified in the petition filed in this Court. The defendant being properly brought before the Court, and called upon to answer the petition of the plaintiff, failing to build up a defence of fraud or mistake, attempts no other, and so admits the facts stated in plaintiff's petition to be true. Still, by counsel he lingers in court, and confines himself to excepting to every order of judgment made in the case, but does not trouble himself to point out in what particular it is objectionable, asks for no modification, nor furnishes any reason or argument in support of any objection. This makes quite easy work for counsel, but quite hard for courts, if they are to examine carefully each step taken, and surmise what possible objection may be urged against their orders when they come to be reviewed in the appellate court.

Take the exception to the first order next after that taken by the order sustaining the demurrer. It is, simply, "To which order defendant excepts." The order excepted to fixes the interest of the respective parties; appoints referees to make partition, who shall inquire whether the premises are capable of actual division, and report accordingly. Against so much of the order no

Mills *v.* Miller.

fault is found here; nor do I see that any can be. But it turns out, however, that here, for the first time, objection is made to the introductory or formal part of the order suggested by the taste of the clerk or attorney who draughted it, which recites that the Court acted upon the pleadings, without it appearing affirmatively that proof was exhibited. Why was nothing said about this in the Court below? There was the place to present that question. If the attention of the Court had been challenged to this point, and the proof had been in fact exhibited, it would have been quite easy to modify the entry so as to show the fact, or, by omitting any reference to the pleadings, destroy the foundation for any inference that no proof was taken. If any thing beyond the admission of the truth of the allegations of the petition, arising from the defendant not denying them, was deemed necessary to warrant the order or judgment made, it was the duty of counsel to insist upon it in the Court below. Objecting to the entry of judgment without proof, or moving to modify or vacate the same if entered for such reason, clearly expressed in the motion, would have brought the subject directly to the attention of the Court. Should the opinion of the Court have been adverse to that of counsel, a bill of exceptions would have saved the point for our examination.

An exception is an objection taken to a decision of the Court upon a matter of law. *Code*, sect. 307. Where the decision objected to is entered on the record, and the grounds of objection appear in the entry, the exception may be taken by the party causing it to be noted at the end of the decision that he excepts. Sect. 310. As in the instance of defendant's exception to the order of the Court sustaining the demurrer to his answer, the grounds of the objection to the answer are stated in the demurrer, — that facts sufficient are not

therein contained to constitute a defence.    The answer,
demurrer, and the order upon it, are properly parts of
the record.    *Code*, 446.    We therefore have clearly be-
fore us the grounds of objection, the decision of the
Court, and the exception thereto.    So, in cases tried by
the Court without a jury, the Court may be called upon,
under sect. 297, to state in its finding its conclusions of
law as well as of fact found.    Here the party may
cause to be noted at the end of such findings his excep-
tions to such conclusions as he may choose to except to.
But to what does the defendant object here ? and what
are the grounds of objection ?    Must the Court come to
a standstill, and review every step in the proceeding,
starting with the question of jurisdiction, and satisfy
itself that every thing has been regularly done, at the
hazard of having its judgment reversed upon points
never disclosed, or adroitly concealed ?    Most assuredly
not.    Appellate courts are provided to review the pro-
ceedings and correct the errors of inferior ones.    Before
a party is entitled to be heard here, he must have ex-
hausted his remedy in the Court below.    For that pur-
pose he must have presented the several questions of
law fairly and fully, and must have obtained an un-
equivocal ruling thereon.    If dissatisfied with the decis-
ion of the Court, he may preserve an exception.    Here,
to be of any avail, the record should show that the objec-
tion set out in the third allegation of the petition in
error was distinctly presented to the Court.    From the
record we cannot conclude but that proof was exhibited :
if it was not, it may have been expressly or tacitly
waived.    We will not guess that error was committed.
It is the duty of the party complaining, not only to show
that error occurred prejudicial to him, but to present
here a record showing affirmatively and clearly that such
is the fact.

MILLS *v.* MILLER.

In *Lawther* v. *Agee*, 34 *Mo.*, 372, it is said, " An irregular judgment will not be reversed on writ of error in first instance here ; but the defendant must have applied in Court below to set it aside." In *Alshuler* v. *Yandes*, 17 *Ind.*, 291, an action was brought on a note, as well as to enforce a vendor's lien. There was a judgment directing the property to be sold, without any inquiry as to sufficiency of personalty as there required. It was held that application should have been made to the Court below to correct the alleged errors.

*Ingersoll* v. *Bostwick*, 22 *N.Y.*, 425, was an action to recover specific personal property. By the New-York Code, the judgment should have been in the alternative for the return of the property or for its value. The judgment was for the value of the property absolutely. It was held that it was an irregularity that should have been corrected in the Court of original jurisdiction. *Hunt* v. *Bloomer*, 3 *Kern*, 341 ; *Magee* v. *Baker*, 4 *id.*, 435 ; *Oldfield* v. *New - York and Harlem R. R.*, 4 *id.*, 310 ; *Smith* v. *Grant*, 15 *N. Y.*, 590 ; *Otis* v. *Spencer*, 16 *id.*, 610 ; *Carman* v. *Pultz*, 21 *id.*, 55 ; *Chamberlain* v. *Dempsey*, 36 *id.*, 148.

The several assignments of error are open to the same criticism.

The judgment of the District Court must be affirmed.