JOHN H. VENT, *per Prochein Ami, versus* JOHN B. OSGOOD.

If a minor, after the death of his father, ship himself in a whale ship, as a mariner, the contract, being voidable by him, is legally avoided by his desertion of the ship before the completion of the voyage, and he may, thereupon, recover a *quantum meruit* for his services.

ASSUMPSIT to recover the value of the plaintiff's services, as a mariner, on board the whaling ship Samuel Wright.

By an agreed statement of facts it appeared, that the plaintiff, in June 1833, being then a minor of the age of fourteen years, shipped himself, with the consent of his mother, in the Samuel Wright, as a mariner, and continued to perform his duty, as such, until the 21st of May, 1835, when he left the ship, then lying at Talcahuana, and did not return to his duty ; and that the ship returned home with a cargo of oil.

The plaintiff was to be nonsuited or the defendant defaulted, according to the opinion of the Court. If the defendant should be defaulted, damages were to be assessed by an auditor, unless the parties could agree upon the amount.

*Nov. 10th.*      *Shillaber,* for the plaintiff, cited 10 Petersd. Abr. 374 ; 2 Kent's Comm. 171, 193, 195 ; *Commonwealth* v. *Hantz,* 2 Pennsylv. R. 333 ; *Moses* v. *Stevens,* 2 Pick. 332 ; *Nickerson* v. *Easton,* 12 Pick. 110 ; *Manchester* v. *Smith,* 12 Pick. 115 ; 1 Bl. Comm. 453 ; *United States* v. *Bainbridge,* 1 Mason, 71.

*Saltonstall,* for the defendant, cited *Stone* v. *Dennison,* 13 Pick. 1 ; *Maddon* v. *White,* 2 T. R. 159 ; *Worcester* v. *Marchant,* 14 Pick. 510 ; *Freto* v. *Brown,* 4 Mass. R. 675 ; *McCoy* v. *Huffman,* 8 Cowen, 84 ; *Weeks* v. *Leighton,* 5 N. Hamp. R. 43.

*Nov. 21st.*      PUTNAM J. delivered the opinion of the Court. The contract for the voyage was by an infant. It was made with the consent of his mother, after the death of his father, but her consent does not give any additional legal validity to the agreement. If the contract were binding, as if made by an adult, then upon the facts agreed the plaintiff must fail to recover, as he shipped for the performance of the whole voyage, and de-

serted the service at a foreign port, without any fault of the owners or master.

Whether a contract by an infant be void or voidable, or binding, is frequently a question of very difficult solution. If it be clearly prejudidial to him, it is void. If it may be for his benefit, or to his damage, it is voidable at his election, and he may avoid it during his minority, or when he becomes of full age. If the contract be clearly beneficial to him, he is bound. And whether the contract comes within one or other of these distinctions, is to be determined by sound judicial discretion. 2 Kent's Comm. (3d ed.) 236, and the authorities cited by him.

Those contracts of a binding character are such as come within the description of necessaries ; for example, for suitable food, clothing, education. And what is necessary or not, is to be tried by the court. 1 Fonbl. 6, 8. And by analogy, the court must determine what is to be considered so prejudicial as to render the contract void, and what circumstances "show a semblance of benefit sufficient to make it voidable only." *Zouch* v. *Parsons*, 3 Burr. 1808. It is not possible to prescribe what shall be the result in each particular case which can arise, so that it shall be clearly included under the one or the other rule applicable to contracts by infants. It must depend upon the circumstances of each case whether the contract be void, voidable, or binding.

Now we all think that the contract under consideration was voidable, at the election of the infant. If the service were consonant with the health, taste and enterprise of the infant, it might be very beneficial ; otherwise it might be exceedingly prejudicial. The law allowed him the privilege or right to judge for himself in this matter, and the owners are supposed to know the law and to contract accordingly, just as if the law were written at large on the agreement.

Here was a trial of nearly two years, and then the infant left the service. He could not have adopted a more significant mode of avoiding the contract than by deserting. Nor are we at liberty to inquire as to the sufficiency of his reasons. The law allowed him the personal privilege of avoiding the contract if he pleased, and the owners must be supposed to have con-

Vent
*v.*
Osgood.

tracted with him upon that basis. They were to be bound; but the infant was to be at liberty to avoid the agreement.

This being a voidable contract, and having been avoided, we are to consider what is the legal result which should follow from the avoidance.

On the part of the plaintiff it is contended, that he is to have a *quantum meruit* for his services.

On the part of the defendant it is contended, that the effect of the avoidance was prospective merely, and that the plaintiff is not to recover for services rendered before the avoidance. And we are referred to several authorities; especially to the cases of *M' Coy* v. *Huffman*, 8 Cowen, 84, and *Weeks* v. *Leighton*, 5 N. Hampsh. R. 43. The court, in the latter case, recoginze the law as laid down in *Stark* v. *Parker*, 2 Pick 267, that where a party has performed labor under a specia. contract which he has abandoned and refused to complete on his part, he shall not recover for such labor. And they think that the circumstance, that the plaintiff was an infant when he entered into the contract, makes no exception in the plaintiff's favor. They cite *Holmes* v. *Blogg*, 8 Taunt. 508, and *M' Coy* v. *Huffman*, 7 Cowen, 184, to show that such is the law in England and in New York.

The case at bar must be determined by the common law relating to infants.

The case of *M' Coy* v. *Huffman* is based upon *Holmes* v. *Blogg*; and the latter stands upon the dictum of Lord *Mansfield* in the case of the *Earl of Buckingham* v. *Drury*, 2 Eden's Ch. R. 60. The question in that case was, whether a woman, married, under twenty-one years of age, having before such marriage a jointure made to her in lieu of her dower, is barred of her dower, within the statute of 27 *Hen.* 8, *c* 10. The judges differed in their opinions, delivered in the House of Lords; four were in the affirmative, and three in the negative. It was in that case that Lord *Mansfield* said, *arguendo*, "If an infant pays money with his own hand, without a valuable consideration for it, he cannot get it back again." It was a mere dictum, which was not involved in the main question then to be decided. Indeed a jointure, by the most respectable authorities, is not to be considered as a contract. It is a pro-

vision for a livelihood.   See Lord *Hardwicke's* opinion in the case above cited.

We do not question the right of an adult to dispose of his property without any valuable consideration, if he pleases.  He may give away his money, if he will, and cannot recover it back.   But it would be a startling proposition, that an infant is bound by such a payment.   The law does not consider that he has discretion to state an account.   He is not bound by an account stated.   If he pays over to the party with whom he is dealing ten times the amount of the account stated, for no consideration at all, is he bound by such payment ?   I put fraud out of the question, in this discussion.   If he binds himself for necessaries, he is not bound by the amount of the bond or note ;  but the claim is to be settled just as it would have been if no bond or note had been given.   The law allows him to contract for necessaries, but it does not consider him to be of sufficient discretion to ascertain the amount.   He is chargeable only for the real value.

And can the law allow the infant to pay away his money without consideration, without redress ?   Suppose that he agrees with an adult, to buy a ship or a farm for $ 10,000, to pay half down, and the rest in sixty days, when the adult agrees to convey the property.   In ten days he avoids the contract.   Shall the adult keep the ship or the farm, and the money advanced ?   We do not think that such is the law.   If it were so, instead of covering him with a shield, it would put him to the sword.

The general rule is, that infants may make valid contracts for necessaries.   They are protected against all other contracts.   They may avoid such other contracts.   What is meant by avoiding ?   We think the obvious meaning is the true and legal one.   It is to nullify and render void *ab initio*, not prospectively.   It is a total, not a partial destruction.   If it were otherwise, the infant might and practically would be ruined by a part execution of the contract.   A partial or prospective avoidance would afford no protection at all.   By the avoidance the contract was annihilated, and the parties are left to their legal rights and remedies, just as if there had never been any contract at all.

The case of *Holmes* v. *Blogg*, cited from 8 Taunton, 508, is more fully reported in 2 Moore, 552. It was an action to recover £157 paid by the plaintiff for rent, in advance, for a building which the plaintiff, an infant and a partner of one Taylor, hired to carry on the business of bootmakers. The partners occupied until the infant became of age, when he avoided the contract. And there was no doubt but that he had a legal right to do so.

The plaintiff gave up all connexion with Taylor and quitted the premises. The court held, that by the avoidance of the contract the plaintiff could only protect himself against the covenants to pay the rent to come, but no further; that he was not entitled to recover the money paid for the lease, although there might be a complete failure of consideration by subsequent events. *Gibbs* C. J. said he had not been able to find any action analogous, except the case before cited, of *Buckingham* v. *Drury*; and he cited the dictum of Lord *Mansfield*, and said very truly, that it went much beyond the case then under his consideration. Now we think it clear, that as the contract was avoided from the beginning, and as the case was to be determined by the principles of law independently of the contract, the plaintiff was not entitled to recover back any more than the difference between the sum charged, and that which in equity ought to have been charged, for the rent of the building which the plaintiff occupied during his infancy. There were some other considerations in that case, relating to the partnership, and whether or not the payment should be considered as made on partnership account, which were dismissed from the case, and it turned entirely on the right of the plaintiff to recover back money paid for rent of a building which he had occupied in his infancy. And upon sound legal principles, the law would not give to the infant such a right, because it would enable him to convert his privilege into an engine of fraud. The law in such case, it seems to us, would have protected the infant from the payment of any greater sum for rent, than the premises he occupied were reasonably worth. For the surplus (if any) the plaintiff was, we think, entitled to recover as being paid on a consideration which had failed. And it is no answer to this reasoning, that the consideration failed

by the act of avoidance of the contract, for that was the exercise of a legal right of the plaintiff. The case then was to be settled as if the plaintiff had occupied the defendant's premises on a promise to pay a reasonable rent, and if he had overpaid, he *was entitled* to recover the surplus. All money paid by one party to the other, on the contract which was made void by the infant, was paid on a consideration which failed. And even in the case of an adult, *a fortiori* in the case of an infant, an action would lie to recover it back.

And so where services have been performed or property delivered by the one to the other, under the expectation that the contract would be fulfilled, the case is to be adjusted and determined by the principles of law, independently of the contract, if it has been avoided.

Those principles however will not sanction any fraud on the part of the infant, but will hold him to answer *criminaliter*, according to his mental power. He is not, as that most eminent and just judge, Lord *Mansfield*, said, to convert the shield into a sword. If he has received money or property under the contract which he has avoided, he must restore it. He must, as far as possible, replace the party with whom he has been contracting, in the same situation in which he stood. And so that party must, in like manner, restore to the infant the money or property which has been received. If the infant, for example, has received goods for a particular purpose, which he has failed to perform, he must return the goods, or be liable to an action for them. Bingham on Infancy, 111. If he has occupied the buildings of the adult, he is liable for rent. 2 Bulstrode, 69.

We have thus far considered the case upon common law principles and authorities having a direct bearing upon it, without reference to the case of *Moses* v. *Stevens*, 2 Pick. 232 ; which cannot, we think, be distinguished in principle from the case at bar.

And upon the whole, we are all satisfied, that the case at bar was upon a voidable contract, that it was legally made void by the infant during his minority, and that he is entitled to maintain this action to recover a *quantum meruit* for his services.

## NOTE.

THE case of *Battles et al.* v. *Fobes*, has been thought to be too briefly reported in 18 Pick. 532 ; a more distinct statement of the facts, therefore, together with the opinion of the Court, are given below.

The action was assumpsit on a note made by the defendant at Boston, September 6th, 1827, payable on demand. The defendant relied on the statute of limitations ; which was pleaded before the Revised Statutes went into operation. The plaintiff sought to avoid the plea, by bringing the case within Revised Stat. c. 120, § 9. The defendant's place of business, when the note was given, was at Elizabeth City, North Carolina, where his family resided. He was in Boston in August 1828 ; and for twelve years before the trial, it had been his practice to go to Boston in the summer, and to be at his place of business during the winter and spring.

PUTNAM J. At the time when the defendant pleaded the statute of limitations, it was a complete bar to this action. By Revised Stat. c. 146, § 5, the repeal of the acts, &c. (among which is the statute of limitations,) shall not affect any act done, or any right accruing, or accrued, or established, &c., before the time when such repeal shall take effect. By Revised Stat. c. 120, § 9, it is provided, that "if, at the time when any cause of action, &c. shall accrue against any person, he shall be out of the State, the action may be commenced, within the time herein limited therefor, after such person shall come into the State ; and if after any cause of action shall have accrued, the person against whom it has accrued shall be absent from and reside out of the State, the time of his absence shall not be taken as any part of the time limited for the commencement of the action." We are apprehensive that this will be found an exceedingly inconvenient provision, in practice ; but when a party brings himself within its terms, we shall apply the law to the evidence which may be adduced in the case. The rights of the defendant were ascertained and fixed before this last statute passed, and he cannot thereby be deprived of them. The legislature, in Revised Stat. c. 146, § 5, above cited, have expressed their will too clearly to leave any reasonable doubt upon the point.