Joyce E. MURPHREE, as Widow and for the Use and Benefit of the next of kin of Woodrow Wilson MURPHREE, deceased, Plaintiff-Appellant,

v.

RAYBESTOS–MANHATTAN, INC., Defendant-Appellee.

No. 81–5758.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1982.

Decided Dec. 30, 1982.

Rehearing and Rehearing En Banc Denied March 10, 1983.

---

Sidney W. Gilreath, Michael Y. Rowland, Knoxville, Tenn., for plaintiff-appellant.

Donald F. Paine, Dwight E. Tarwater, Lead Counsel, Knoxville, Tenn., for Raybestos-Manhattan.

\* The Honorable Bernard T. Moynahan, Jr., Chief District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

Before MERRITT and JONES, Circuit Judges, and MOYNAHAN,\* Chief District Judge.

MERRITT, Circuit Judge.

Plaintiff appeals from a jury verdict in a products liability action brought by her for the wrongful death of her husband allegedly caused by an asbestos-related disease. The District Court erred on several issues in conducting the trial, and accordingly we reverse and remand the case for a new trial.

The evidence at trial established that plaintiff's decedent, Mr. Murphree, worked as a service station mechanic and manager from 1950 until shortly before his death in 1979. Involving the replacement and installation of automobile brakes, his job allegedly caused him to be exposed to asbestos dust from brake lining materials supplied by defendant. According to plaintiff's theory, this exposure resulted in Mr. Murphree contracting mesothelioma, a cancer of the lining of the chest. This disease ultimately caused his death. All of the expert witnesses who testified at trial agreed that Mr. Murphree's disease resulted from his occupational exposure to asbestos-containing products.

### I.

Mr. Murphree was first exposed to defendant-manufacturer's asbestos product more than ten years before February, 1979, when he discovered he had mesothelioma. The main question of law on appeal in this diversity case is whether Tennessee's ten year statute of limitations based on sale, adopted July 1, 1978, as T.C.A. § 29–28–103 (action "must be brought within ten years from the date ... product ... first purchased for use") created for defendant a vested right barring plaintiff's claim despite a July 1, 1979, statutory amendment excluding asbestos-related disease actions from this ten year ceiling.[1] The Tennessee

1. The trial court made the issue of the application of the ten year statute a jury question, charging the jury as follows:

   Under Tennessee Products Liability Law, if a plaintiff discovered, or should have discov-

appellate courts have not spoken directly on this issue. We hold that Tennessee's vested rights doctrine based on Tennessee Constitution Article I Section 20 does not bar the claim and that the 1979 amendment is applicable as a matter of law.

Interpretation of Tennessee's various statutes of limitations governing products liability actions has created troublesome problems for Tennessee courts in the past two decades. In 1969 the Tennessee Supreme Court in *Jackson v. General Motors,* 223 Tenn. 12, 441 S.W.2d 482 (1969), adopted a rule widely criticized by the bench and bar of the state. It held that Tennessee's limitations statute in products cases begins to run on the date of purchase of the product and not on the date of injury or discovery. Thus, in some cases of latent disease and injury the limitation period expired before discovery by the victim. The legislature acted promptly to overrule the holding in *Jackson* by amending the statute. In 1974 the Tennessee Supreme Court, with Justice William Fones dissenting, prevented the amendment from becoming effective. The Court held in *Ford Motor Company v. Moulton,* 511 S.W.2d 690 (Tenn.1974) that under Tennessee vested rights doctrine, based on Article I Section 20 of the Tennessee Constitution, the statutory amendment running the limitation period from discovery could not be applied retroactively. Thus, the seller who sold his product outside the statutory period was held to have a vested right to defeat an action for injuries discovered and sued upon during the statutory period.

In 1975, shortly after the decision in *Moulton,* a new Tennessee Supreme Court was elected. Of the members of the old Court, only Justice William Fones remained. He became the first Chief Justice of the new Court. The new Court, in an opinion by Justice Joe Henry (a beloved member of that Court until his recent untimely death), promptly overruled *Jackson v. General Motors, supra,* and held that the limitations statute runs from discovery, not sale. In *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975), Justice Henry held that "reason, logic and fundamental fairness" demand that the running of the statute begin upon discovery, for it is ludicrous to have a "law which charges a litigant with sleeping upon any right which he does not have" just as one cannot "harvest a crop never planted, or burn down a house never built." 524 S.W.2d at 489. The *McCroskey* opinion announces very clearly that judicial policy in Tennessee does not favor doctrines that activate statutes of limitations before the plaintiff has knowledge of his injury.

Although the Tennessee Supreme Court in *McCroskey* did not expressly overrule the vested rights doctrine as applied to statutes of limitations in *Moulton,* it is clear to us that the *Moulton* vested rights doctrine no longer has any vitality. Justice Henry's *McCroskey* opinion quotes from that part of Justice Fones' *Moulton* dissent that quotes in turn from an opinion of this Court by Judges Phillips, Edwards and Celebrezze. In *McCroskey* Justice Henry said:

Our own Chief Justice [Fones] dissented from the majority opinion in *Ford Motor Company v. Moulton, supra.* We quote from his dissent:

"The following principles are stated concisely in *Hodge v. Service Machine Company,* 438 F.2d 347 (6th Cir.1971).

'A cause of action accrues when a suit may be maintained upon it. Black's Law

---

ered, his injury between July 1st, 1978 and June 30th, 1979, then he may not recover damages if the product which allegedly caused his injury was first purchased for use or consumption more than ten years prior to the date on which his lawsuit was filed.

It should be remembered that this ten year period of limitation applies only when the plaintiff discovered, or should have discovered, his injury during the year beginning July 1st, 1978 and ending June 30th, 1979.

This lawsuit was filed on December 8th, 1979. Therefore, if you find that plaintiff discovered, or should have discovered, his injury between July 1st, 1978 and June 30th, 1979, then, you should not consider exposure of plaintiff's decedent to defendant's products which were purchased for use or consumption before December 7th, 1969.

Dictionary 37 (4th ed. 1951). A suit may not be brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce. In civil actions for damages, two elements must coalesce before a cause of action can exist: (a) a breach of some legally recognized duty owed by the defendant to the plaintiff; (b) which causes the plaintiff some legally cognizable damage.'

To hold that a products liability action, which is a recognized legal right, is barred by a statute of limitations before any injury is sustained, deprives a person of the opportunity of redress for an injury done him in his goods or person by due process of law, contrary to our Constitution. 511 S.W.2d at 697."

524 S.W.2d at 490.

Regarding *Moulton,* the *McCroskey* Court stated that it did not need to reach the retroactivity—i.e. vested rights—question. However, the Court did make the following observation: "We, therefore, neither reaffirm nor reverse *Ford Motor Co. v. Moulton,* but we have quoted, with approval, from the dissent of our present Chief Justice."

We do not find that the Tennessee Supreme Court has had occasion to speak on the retroactivity question in products cases since *McCroskey.* Justice Henry's language in that case quoting from Justice Fones' reliance on our opinion in *Hodge v. Service Machine Co.,* 438 F.2d 347 (6th Cir.1971), and our knowledge of the careful and progressive character of the Tennessee Supreme Court, make it clear to us that the old vested rights doctrine as applied to statutes of limitations in *Moulton* is no longer the law in Tennessee and will be overruled when the occasion arises.

Tennessee will no longer apply under Article I Section 20 of its Constitution a vested rights doctrine to defeat a statutory amendment that runs a statute of limitations from the time of discovery of the injury. The Tennessee Supreme Court will no longer use the vested rights doctrine to prevent the Tennessee legislature from ameliorating the harshness of a rule that bars a plaintiff's claim before he discovers it.

Thus the plaintiff's claim here is not barred under Tennessee law. The statutory amendment excepting asbestos-related disease causes of action from the ten year limitations statute based on sale does not abridge any right protected under the Tennessee Constitution. This brings the Tennessee law into line with federal law on vested rights as applied to statutes of limitations under the Federal Constitution. The United States Supreme Court has long since rejected old doctrines of substantive due process which said that a liberalizing change in a statute of limitations abridges vested rights. *See Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628, *reh. denied,* 325 U.S. 896, 65 S.Ct. 1561, 89 L.Ed. 2006 (1945) (statutory amendment abolishing limitations defense did not deprive defendant of any right); *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885) (statutes of limitations go to matters of remedy rather than destruction of fundamental rights). In *Donaldson, supra,* Justice Jackson stated for the Court:

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizens from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349 [64 S.Ct. 582, 586, 88 L.Ed. 788]. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a

"natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Id.* 325 U.S. at 314, 65 S.Ct. at 1142.

Therefore, the District Court erred in allowing the statute of limitations issue to go to the jury under a charge that allowed the jury to base a verdict for defendant on the 10 year statutory ceiling on products liability cases. The 1979 statutory amendment excepting asbestosis cases applies to this case and is not made ineffective by the vested rights doctrine.

### II.

■ Appellant also urges that the trial court's jury instruction on the element of proximate causation constitutes reversible error. We agree. Although appellant presented evidence that her decedent had been exposed to asbestos dust from brake linings manufactured by the defendant, other evidence showed that Mr. Murphree had also worked with brake linings made by other companies who were not sued. In charging the jury, the district court stated:

Not only must the product have been defective and unreasonably dangerous at the time it left the defendant's hands, under the guidelines that the Court has previously outlined to you, but also the defect must be *the* cause of plaintiff's harm—or the decedent's harm.

\* \* \* \* \* \*

The proximate cause of an injury or of death or of an accident is *that act* or omission of duty which proximately and immediately caused the harm to the one that was injured, or *that omission* of duty which failed to prevent it, and without which the accident would not have occurred. [emphasis supplied]

Under this charge, the jury was instructed to determine whether appellant had proved that Mr. Murphree's exposure to defendant's product constituted the sole cause of his disease. This instruction fails to reflect Tennessee law regarding liability of joint tort feasors, as stated in *Waller v. Skeleton,* 31 Tenn.App. 103, 212 S.W.2d 690, 696 *cert. denied,* 186 Tenn. 433, 211 S.W.2d 445 (1948):

A defendant's negligent act, in order to be the proximate or legal cause of plaintiff's injuries, need not have been the whole cause or the only factor in bringing them about. It was enough if such act was a substantial factor in causing them.

\* \* \* \* \* \*

Where there were two causes which proximately contributed to plaintiff's injuries, for only one of which defendant was responsible, and with the other of which neither he nor the plaintiff was chargeable, defendant is liable for all of such injuries as if they had been caused by his negligence alone. [citations omitted]

The Tennessee Supreme Court quoted the above passages approvingly in *Velsicol Chemical Corp. v. Rowe,* 543 S.W.2d 337, 341 (Tenn.1976). The District Court declined to give a charge based on this proximate cause standard, and its ruling was error.

### III.

As a final ground for reversal, appellant contends that the District Court's conduct and remarks during trial in the presence of the jury prejudiced her by displaying disdain for her claim and her attorneys, and unduly handicapped the presentation of her case. For example, when one of appellant's attorneys—a woman—prefaced the examination of an expert witness by stating her desire to summarize his qualifications, the Court interjected:

Provided you will be brief. Now, don't be woman like and just talk, and talk, and talk.

MRS. ROWLAND: I will try my best.

THE COURT: Well, I don't know. You haven't been doing very good. You have been talking too long and too much—too much.

On another occasion, the trial court responded to plaintiff's counsel's request to call a certain witness with the following statement in the jury's presence:

> I have already ruled on this. I will not hear him, either. I have already ruled on it. Now let's get on. I am getting tired of listening to you—awful tired.

Appellant also argues that the District Court erred in refusing to allow her to present the testimony of a doctor regarding his knowledge of asbestos-related diseases in the 1940's in order to refute defendant's claim of longstanding ignorance of the product's hazardous nature.

In view of our holdings in parts I and II of this opinion, *supra,* we find it unnecessary to decide whether the District Court's remarks and conduct—standing alone—would require reversal. The case is accordingly reversed and remanded for a new trial.

NATHANIEL R. JONES, Circuit Judge, concurring.

Although I concur completely in Parts I and II of the opinion, I write separately to make clear my feelings about the issue in Part III in regard to the requirements that are imposed upon trial judges, especially when they are conducting a jury trial. Sexist or other similar ill-advised aspersions cast by a judge have no place in a judicial proceeding. A trial judge is required to conform to standards of fairness and impartiality and, consequently, he should exercise self-restraint so as to preserve an atmosphere of impartiality. This requirement extends to the area of stereotypical gender references just as firmly as to other types of bias and prejudice. When the remarks of the judge during trial or the manner in which he conducts a trial indicate a personal bias or prejudice, any resulting judgment is rendered invalid. *Knapp v. Kinsey,* 232 F.2d 458, 466 (6th Cir.1956). More importantly, the trial judge "must be careful not to indicate by his behavior that he prefers one litigant over another or that he disparages a litigant or his counsel." *Steinberg v. Ogden Foods, Inc.,* 501 F.2d 1339, 1341 (6th

Cir.1974) (per curiam). Moreover, when a review of the record evidences that the jury could have easily concluded that the judge favored one party's position, then a new trial is warranted. *Newman v. Staley Manufacturing Co.,* 648 F.2d 330, 336 (5th Cir. 1981).

Upon review of the trial proceedings below, it is clear that the comments of the trial judge and the manner in which he conducted the proceedings contravened the standards of fairness and impartiality that have been mandated by our previous decisions. These standards should be adhered to upon the retrial of this case so that an atmosphere of impartiality is preserved.