HAROLD GIVENS AND OLGA GIVENS, PLAINTIFFS, V. ANCHOR PACKING, INC., ET AL., DEFENDANTS.
466 N.W.2d 771

Filed March 15, 1991.   No. 90-697.

Michael Kelley and Geoffrey C. Hall, of Kelley, Kelley & Lehan, P.C., and Michael K. Mixson, of Middleton & Anderson, P.C., for plaintiffs.

Theodore J. Stouffer, of Cassem, Tierney, Adams, Gotch & Douglas; William J. Brennan, Jr., and Gerald Friedrichson, of Fitzgerald, Schorr, Barmettler & Brennan; Cathy J. Dean, of Polsinelli, White, Vardeman & Shalton; John P. Mullen, of

Gaines, Mullen, Pansing, Hogan & Cotton; Thomas A. Otepka, of Gross & Welch; and Joseph F. Gross, Jr., of Timmermier, Gross & Burns, for defendants.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and RONIN and COLWELL, D. JJ., Retired.

CAPORALE, J.

Pursuant to the provisions of Neb. Rev. Stat. § 24-219 (Reissue 1989), this court accepted certification from the U.S. District Court for the District of Nebraska of the following question:

> Whether the 1981 amendment to Neb. Rev. Stat. § 25-224(2) and (5) can be retroactively applied to causes of action based upon injury allegedly resulting from exposure to asbestos products which were first sold for use or consumption more than ten years prior to August 30, 1981, which causes had earlier been extinguished by the provisions of the 1978 enactment of Neb. Rev. Stat. § 25-224(2).

We answer in the negative; that is, the amendment may not be applied retroactively.

In considering a motion for summary judgment filed by some of the defendants, the certifying court has found that there is no genuine issue as to the following material facts: Plaintiff Harold Givens was employed as a plumber in the construction industry from 1945 until he retired in 1984 at the age of 62; in the course of his employment he was exposed to asbestos products manufactured and sold for use or consumption by the defendants prior to August 30, 1971; these asbestos products contained at least some of the components mentioned in Neb. Rev. Stat. § 25-224(5) (Reissue 1989); in 1987, plaintiff discovered facts which led to a diagnosis of injury caused by his employment exposure to asbestos products; and he filed his lawsuit on June 17, 1988.

Prior to its amendment, § 25-224 (Reissue 1979) read, in pertinent part:

> (1) All product liability actions shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs.

(2) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action . . . shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption.

Effective August 30, 1981, § 25-224 was amended to read, in pertinent part:

(1) All product liability actions, except one governed by subsection (5) of this section, shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs.

(2) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action, except one governed . . . by subsection (5) of this section, shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption.

. . . .

(5) Any action to recover damages based on injury allegedly resulting from exposure to asbestos composed of chrysotile, amosite, crocidolite, tremolite, anthrophyllite, actinolite, or any combination thereof, shall be commenced within four years after the injured person has been informed of discovery of the injury by competent medical authority and that such injury was caused by exposure to asbestos as described herein, or within four years after the discovery of facts which would reasonably lead to such discovery, whichever is earlier. No action commenced under this subsection based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer unless such seller is also the manufacturer of such product or the manufacturer of the part thereof claimed to be defective. Nothing in this subsection shall be construed to permit an action to be brought based on an injury described in this subsection

discovered more than two years prior to August 30, 1981.

Thus, the present statutory language purports to except from the 10-year period contained in § 25-224(2) damages based on injuries allegedly resulting from exposure to certain asbestos components. The question is whether this exception can be retroactively applied to lift a bar which had already been completed before the exception was adopted.

Plaintiffs argue that the postamendment text of the statute, being the edition in effect both at the time the cause of action accrued and when the claim was filed, is the version which is applicable to the suit. However, as we have said many times down through the years:

> " 'It is well settled that it is competent for the legislature to change statutes prescribing limitations to actions, and that the one in force at the time suit is brought is applicable to the cause of action. The only restriction on the exercise of this power is, that the legislature cannot remove a bar or limitation which has already become complete, and that no limitation shall be made to take effect on existing claims without allowing a reasonable time for parties to bring action before these claims are absolutely barred by a new enactment.'. . ."

*Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 563-64, 279 N.W.2d 603, 607 (1979), quoting *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974), quoting *Horbach v. Miller*, 4 Neb. 31 (1875), quoting *Bigelow v. Bemis*, 84 Mass. (2 Allen) 496 (1861), citing *Darling v. Wells*, 55 Mass. (1 Cush.) 508 (1848), *Brigham v. Bigelow*, 53 Mass. (12 Met.) 268 (1847), *Willard v. Clarke*, 48 Mass. (7 Met.) 435 (1844), *Wright v. Oakley & another*, 46 Mass. (5 Met.) 400 (1843), and *Battles v. Fobes*, 35 Mass. (18 Pick.) 532 (1836), *more fully reported* 36 Mass. (19 Pick.) 578 (1837). This maxim has been followed by this court for fivescore and 16 years.

While we have never applied to the statute and amendment in question the rule that the Legislature cannot remove a limitations bar which has become complete, the maxim states a broad principle on the limits of legislative power, clearly applicable to the question certified. Whether § 25-224(2) is

characterized as a statute of repose (as correctly advocated by defendants), or as a statute of limitations (as advocated by plaintiffs), it is a statute prescribing limitations on actions. As such, its amendment cannot resurrect an action which the prior version of the statute had already extinguished.

Although we have never fully articulated the rationale behind this rule, it is grounded upon the due process guarantee found in Neb. Const. art. I, § 3, which prevents persons from being deprived of their property without due process of law. The immunity afforded by a statute of repose is a right which is as valuable to a defendant as the right to recover on a judgment is to a plaintiff; the two are but different sides of the same coin. Just as a judgment is a vested right which cannot be impaired by a subsequent legislative act, *Karrer v. Karrer*, 190 Neb. 610, 211 N.W.2d 116 (1973), so, too, is immunity granted by a completed statutory bar. See *Denver Wood Products Co. v. Frye*, 202 Neb. 286, 275 N.W.2d 67 (1979) (a person has no vested right in the running of a statute of limitations unless it has completely run and barred the action before the new limitation becomes effective). These are substantive rights recognized by Nebraska law and protected by its Constitution.

Plaintiffs cite us to a number of cases from other jurisdictions in support of their argument against the vested right theory. Most of these cases are from jurisdictions which either had a history of viewing even a perfected bar as a mere procedural right or made no distinction between statutes of limitations and statutes of repose.

For example, plaintiffs point to the case of *Campbell v. Holt*, 115 U.S. 620, 6 S. Ct. 209, 29 L. Ed. 483 (1885), as authority against the vested right theory. In *Campbell*, the U.S. Supreme Court upheld the Texas Supreme Court's determination that the repeal of a statute of limitations removed an already completed bar on an action for debt and that this did not deprive the defendant of a constitutionally protected property right. Justices Bradley and Harlan dissented, quoting the same passage from *Bigelow v. Bemis, supra*, which we have been repeating these long years. While this might suggest a disapproval of *Bigelow v. Bemis* on the part of the *Campbell* majority, we observe that *Campbell* merely

affirmed a determination of the Texas Supreme Court that retroactive application did not offend the federal Constitution. Since the statute at issue in *Campbell* was suspended by a provision of the Texas Constitution, the Texas court did not need to address state law questions. Our determination, however, is controlled by state law. It is interesting to note that just 2 years after the U.S. Supreme Court decided *Campbell*, the Texas court, without criticizing *Campbell*, found that a statute preventing the assertion of a statute of limitations in tax cases was unconstitutional ex post facto legislation as applied to parties who already enjoyed a completed bar. See *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249 (1887).

Plaintiffs also place particular emphasis on *Murphree v. Raybestos-Manhattan, Inc.*, 696 F.2d 459 (6th Cir. 1982), in which a three-judge panel of the U.S. Court of Appeals for the Sixth Circuit held that revival of a barred asbestos claim was not impermissible under Tennessee's vested rights doctrine, predicting that the Tennessee Supreme Court would overrule *Ford Motor Company v. Moulton*, 511 S.W.2d 690 (Tenn. 1974), *cert. denied* 419 U.S. 870, 95 S. Ct. 129, 42 L. Ed. 2d 109, which held that revival of a barred cause of action was impermissible under the state Constitution. The rationale for this prediction was language in *McCroskey v. Bryant Air Conditioning Company*, 524 S.W.2d 487 (Tenn. 1975), holding that a statute of limitations runs from discovery, quoting from the *Moulton* dissent. The language relied upon in *Murphree* was concerned with when a statute of limitations begins to run and not with whether rights vested after the period had expired. The *Murphree* court also ignored the effect of the completed bar of a statute of repose (as distinguished from one of limitations), that is, that a statute of repose eliminates the possibility of a cause of action accruing. See *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982) (a medical malpractice case citing *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972)). Whatever the accuracy of the sixth circuit court's prediction may be as to the future conduct of the Tennessee Supreme Court, the prediction is not applicable to Nebraska.

While in *MacMillen v. A. H. Robins Co.*, 217 Neb. 338, 348

N.W.2d 869 (1984), we held one fraudulently concealing a product's dangers was estopped from asserting the product liability statute of repose, we have consistently stated that a completed bar is a substantive, vested right which the Legislature cannot abrogate. *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979); *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974); *Horbach v. Miller*, 4 Neb. 31 (1875); *Denver Wood Products Co. v. Frye*, 202 Neb. 286, 275 N.W.2d 67 (1979). In doing so, we have followed the path set forth in *Bigelow v. Bemis*, 84 Mass. (2 Allen) 496 (1861), and advocated by the *Campbell* dissent, and we have not been unaccompanied. See, e.g., *LeBlanc v. City of Lafayette*, 558 So. 2d 259 (La. App. 1990); *Dickens v. Southtrust Bank of Alabama*, 570 So. 2d 610 (Ala. 1990); *Waller v. Pittsburgh Corning Corp.*, 742 F. Supp. 581 (D. Kan. 1990); *Conoco, Inc. v. Phipps*, 789 P.2d 253 (Okla. App. 1989); *Whitt v. Roxboro Dyeing Co.*, 91 N.C. App. 636, 372 S.E.2d 731 (1988); *School Bd. of the City of Norfolk v. U.S. Gypsum*, 234 Va. 32, 360 S.E.2d 325 (1987); *Pait v. Ford Motor Co.*, 515 So. 2d 1278 (Fla. 1987); *Ayo v. Control Insulation Corp.*, 477 So. 2d 1258 (La. App. 1985), *cert. denied* 481 So. 2d 1349 (1986); *Cheswold Vol. Fire Co. v. Lambertson Const.*, 489 A.2d 413 (Del. 1984); *Matter of M. D. H.*, 437 N.E.2d 119 (Ind. App. 1982); *Dobson v. Quinn Freight Lines, Inc.*, 415 A.2d 814 (Me. 1980); *Del Monte Corp. v. Moore*, 580 P.2d 224 (Utah 1978); *D.Z.M. v. D.A.G.*, 41 Colo. App. 377, 592 P.2d 1 (1978); *Haase v. Sawicki*, 20 Wis. 2d 308, 121 N.W.2d 876 (1963); *Jackson v. Evans*, 284 Ky. 748, 145 S.W.2d 1061 (1940); *In re Swan's Estate*, 95 Utah 408, 79 P.2d 999 (1938); *Wasson v. State ex rel. Jackson*, 187 Ark. 537, 60 S.W.2d 1020 (1933); *Cathey v. Weaver*, 111 Tex. 515, 242 S.W. 447 (1922).

It is true that some states have recently departed from this "vested right" approach in order to accommodate those suffering from asbestos illnesses. See, e.g., *City of Boston v. Keene Corp.*, 406 Mass. 301, 547 N.E.2d 328 (1989). Such an approach, however, tramples upon the vested rights of others. An edict which is not applied uniformly and in accordance with preestablished principles to all who are subject to its provisions

cannot be characterized as a rule of law.

It is plaintiffs' further position that the Legislature intended the 1981 amendments to § 25-224 to have retroactive application. Even assuming, arguendo, that the Legislature did have such an intent, *Grand Island School Dist. #2, supra, Educational Service Unit No. 3, supra*, and *Horbach, supra*, all state that the Legislature does not have the power to remove a bar which has already become complete. If the bar was completed before passage of the amendment, then the Legislature's intent as to retroactive application is immaterial.

Plaintiffs next contend that application of the prior version of § 25-224 to asbestos cases violates the open courts doctrine of Neb. Const. art. I, § 13. Whatever the merits of this contention may be, it is not now properly before us. This is true for two reasons. First, the constitutionality of the prior variant of this provision is not a question certified to this court; the question certified is whether the 1981 amendments may be applied retroactively. Second, Neb. Ct. R. of Prac. 9E (rev. 1989) requires a party presenting a case involving a constitutional issue to file a copy of its brief with the Attorney General and proof of such service with the Clerk of the Supreme Court. This requirement is to allow the state the opportunity to defend the laws which it has enacted. The record does not evince compliance with rule 9E. If a party fails to observe rule 9E, this court will not consider the constitutionality of the statute under attack. *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 463 N.W.2d 312 (1990).

Plaintiffs further contend that "[t]he ten-year limitations period of Neb. Rev. Stat. § 25-224 [prior to the 1981 amendment] does not apply generally to causes of action for diseases caused by defective products which are preceded by long latency periods and specifically to such diseases caused by asbestos." Again, the question before us is the scope of § 25-224 after its amendment in 1981 and not the range of the statute prior to its amendment. Thus, this contention, whatever its merits, is outside the scope of the inquiry here, for we are limited to answering the question of law which was certified. § 24-219 ("[t]he Supreme Court may answer questions of law certified to it [by a federal court] when requested by the

certifying court"). The question certified presupposes that plaintiffs' action would be barred under the earlier version of § 25-224.

For the foregoing reasons, we answer the question certified to us in the negative.

JUDGMENT ENTERED.

SHANAHAN, J., dissenting.

"[I]f you poison us, do we not die?" That questions leads to another.

Whether Neb. Rev. Stat. § 25-224(2) (Reissue 1989) is constitutional is a question properly presented to this court, a question which must be answered for a correct disposition of the Givenses' claims under Nebraska law. As the majority has noted, "the question before us is the scope of § 25-224 after its amendment in 1981 . . . ." Givenses and all defendants in this case have briefed and argued the constitutional pros and cons concerning the applicable parts of § 25-224, which, except for the 1981 amendatory addition of the provision regarding injury from exposure to asbestos, has remained the same since enactment of the statute in 1978.

Although the majority refers to the absence of Givenses' serving a copy of their brief on the Nebraska Attorney General in compliance with Neb. Ct. R. of Prac. 9E (rev. 1989), in view of the peculiar nature of these proceedings, service of briefs is unnecessary under the circumstances. Whatever is the structure of Nebraska's appellate court system, now or in the future, none would suggest that the certified question by the U.S. District Court for the District of Nebraska, on its own motion, is an appeal from that court. Rather, as a result of the procedure authorized by Neb. Rev. Stat. § 24-219 (Reissue 1989) relative to a federal court's certified question, this court is not exercising appellate jurisdiction, but, as a practical matter, has become an adjunct of the federal trial court in which Givenses' lawsuit is pending. No Nebraska statute appears to require that a litigant notify the Nebraska Attorney General at the trial level regarding some aspect of possible unconstitutionality of a statute applicable to the trial of a tort action.

Notwithstanding Rule 9E, the constitutional question has been adequately presented by the parties. The times that the

state has appeared before this court, after notice concerning a constitutional question in an appeal to which the state is not a party, are so few that an appearance by the state under those circumstances, if in fact there has ever been such an appearance (I can recall none), would indeed be the rare exception, not the standard procedure. We need not pursue that aspect any further, for Givenses are not making a facial challenge to § 25-224(2), requesting that this court strike down the so-called statute of repose and wipe § 25-224(2) off the "maroon books." Rather, Givenses are asking that this court conclude that the statute of repose in § 25-224(2), when applied to Givenses in their particular circumstances, has an unconstitutional effect or result. Consequently, outside the restricted setting of the Givenses' action, even if Givenses' limited constitutional claim were sustained, § 25-224(2) and its "repose" would remain part of the law for a limitation of product liability actions in Nebraska. Thus, the real question is whether § 25-224(2) can be constitutionally applied to the Givenses' claims.

At the outset, it is good to recall what we have expressed as the definition or characterization of a "cause of action," namely, "[a] cause of action is judicial protection of one's recognized right or interest, when another, owing a corresponding duty not to invade or violate such right or interest, has caused a breach of that duty." *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 193, 376 N.W.2d 539, 548 (1985). Accord, *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990); *First Nat. Bank of Omaha v. State*, 230 Neb. 259, 430 N.W.2d 893 (1988). See *Suhr v. City of Scribner*, 207 Neb. 24, 295 N.W.2d 302 (1980).

Traditionally, in Nebraska, a cause of action accrues when an injury occurs and the aggrieved party, therefore, has a right to institute and maintain a suit for redress. See, *Rosnick v. Marks*, 218 Neb. 499, 357 N.W.2d 186 (1984); *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983); *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

In *Condon v. A. H. Robins Co.*, 217 Neb. 60, 349 N.W.2d 622 (1984), after acknowledging that actual damage is an essential element of a cause of action based on negligence, we

stated:

> It has long been recognized in this jurisdiction that a cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. [Citation omitted.] Nebraska has a statute specifically declaring that concept to be the law of this jurisdiction. Neb. Rev. Stat. § 25-201 (Reissue 1979) provides: "Civil actions can only be commenced within the time prescribed in this chapter, after the cause of action shall have accrued."

217 Neb. at 64-65, 349 N.W.2d at 625.

As one commentator has noted:

> Actual loss or damage resulting to the interests of another [is a necessary element of a negligence cause of action]. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.

Prosser and Keeton on the Law of Torts, *Negligence: Standard of Conduct* § 30 at 165 (5th ed. 1984).

"A statute of repose is a type of a statute of limitations." *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 124, 362 N.W.2d 35, 41 (1985). In a statute of limitations, "injury" has a legal meaning and denotes conduct which invades any legally protected interest of another. *Rosnick v. Marks, supra.*

Courts in other jurisdictions, examining accrual of a cause of action based on an asbestos-related injury, have concluded that manifestation of injury is a necessary element of an asbestos-related tort action and that a cause of action for such tortious injury does not exist or accrue until manifestation of the injury. *Schweitzer v. Consolidated Rail Corp. (Conrail)*, 758 F.2d 936 (1985); *Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151 (1981); *Louisville Trust Co. v. Johns-Manville Products*, 580 S.W.2d 497 (Ky. 1979); *Harig v. Johns-Manville Products*, 284 Md. 70, 394 A.2d 299 (1978); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (1977); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 421 N.E.2d 864 (1981).

However, this court has elected to bypass the injury-damage

element, heretofore utilized in Nebraska to determine when a tort cause of action has come into existence, and has determined that a cause of action for an asbestos-related injury accrues at the date of a claimant's last exposure to the asbestos. Therein lies the constitutional question.

Whereas a statute of limitations runs from the date when a cause of action accrues, that is, on injury or a violation of a legal right, *Witherspoon v. Sides Constr. Co., supra*, a statute of repose prevents accrual of a cause of action after a definite time, specifically designated by statute and independent of any injurious occurrence or discovery of damage or injury. *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982). In relation to a product liability statute of repose, policy considerations include manufacturers' objections that current legal concepts, scientific knowledge, and improved technology are applied to products made several years ago and the notion that passage of time will result in improvement of product design and safety; hence, a time limit on liability for products. *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind. 1989); *Knox v. AC & S, Inc.*, 690 F. Supp. 752 (S.D. Ind. 1988).

The Givenses' product liability claims are not the type based on a product's malfunction or final failure due to some mechanical, structural, or design deficiency which causes personal injury contemporaneous with the violence usually resulting from the product's failure, such as incineration of a driver in a defectively designed automobile or dismemberment by an unsafe appliance or machine. The Givenses' claims are based on an injury-producing substance, asbestos, which, as the result of Harold Givens' protracted exposure to the asbestos, caused physical debilitation without immediately noticeable or demonstrable symptoms of injury. Nothing indicates that Harold Givens was even remotely aware of his asbestos-related injury before 1987, when he obtained a medical diagnosis that he had a disease caused by certain asbestos products. Givenses filed suit in June 1988.

According to the rule which the majority has announced today concerning § 25-224(2) and a latent injury, the 10-year limit on a product liability cause of action is absolute and "extinguished" Givenses' claims before the 1981 amendment.

It is beyond question that, before and since enactment of § 25-224(2), Nebraska's common law recognizes a cause of action for product liability based on negligence and strict liability. None would reasonably and sincerely argue that Givenses do not have the right to be free from injury and damages caused by another's tortious conduct. Correspondingly, nobody would seriously contend that Givenses should not have a right to a remedy for damages from another's tortious conduct.

Neb. Const. art. I, § 13, provides: "All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay." Thus, article I, § 13, is recognition that a right to redress for personal injury is a very important substantive right of constitutional stature and incorporates into the Nebraska Constitution a fundamental element of fairness, "a perhaps vaguely conceived but important notion of limitation on the power of government to infringe upon individual rights, and to act arbitrarily." See *Fireman's Fund Am. Ins. Co. v. Coleman*, 394 So. 2d 334, 351 (Ala. 1980) (Shores, J., concurring) (construction of the "open courts" guarantee, article I, § 13, of the Alabama Constitution). Accord *Lankford v. Sullivan, Long & Hagerty*, 416 So. 2d 996 (Ala. 1982). Neb. Const. art. I, § 13, "guarantees access to the courts and a judicial procedure that is based on fairness and equality [so that] an individual [cannot] be arbitrarily deprived of effective remedies designed to protect basic individual rights." See *Berry By and Through Berry v. Beech Aircraft*, 717 P.2d 670, 675 (Utah 1985) ("open courts" guarantee in the Utah Constitution). Consequently, the Legislature "has no power to make a remedy by due course of law contingent on an impossible condition." See *Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex. 1984) ("open courts" guarantee in the Texas Constitution).

As a result of article I, § 13, and its "open courts" guarantee, the Legislature cannot constitutionally, under guise of a limitation on an action, entirely abolish an existing remedy, since such elimination would amount to a denial of justice. As the U.S. Supreme Court expressed in *Wilson v. Iseminger*, 185

U.S. 55, 62, 22 S. Ct. 573, 46 L. Ed. 804 (1902):

> "Every government is under obligation to its citizens to afford them all needful legal remedies . . . ."

. . . .

> . . . It may be properly conceded that all statutes of limitation[s] must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions.

As previously noted, a remedy is unavailable until a cause of action exists. A cause of action does not exist until conduct causes injury which, in turn, results in loss or damages. In Givenses' situation, their protectable legal interests or rights were not tortiously invaded until long after the asbestos was placed in contact with Harold Givens, an injury unknown and undetectable for many years after Harold Givens' exposure to asbestos. Missing from Givenses' case is any carelessness or lack of diligence in bringing their action. What is missing is manifestation of injury until more than 10 years had elapsed after Harold Givens was last exposed to asbestos.

For the Givenses and any claims for personal injuries which are unmanifested for years, the effect of an absolute and inflexible 10-year limitation on product liability claims is nullification of a cause of action before the cause even arises. Fundamental unfairness is the very essence of a statute of repose, especially as construed by this court's majority today, which eliminates or extinguishes a cause of action before an injury may reasonably be detected or discovered, quintessential unreasonableness in an inversionary approach to accrual of a tort cause of action by reversing time's linear dimension. Inversion and the backward movement of events might have fascinated Lewis Carroll to the extent that such phenomena coursed through "Alice's Adventures in Wonderland" and "Through the Looking-Glass and What Alice Found There," but the injustice and absurdity of barring a cause of action before its existence is summarized in the words of Judge Jerome

N. Frank, dissenting in *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir. 1952):

> Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i e.*, before a judicial remedy is available to the plaintiff.

Although Neb. Const. art. I, § 13, does not prevent reasonable legislation which restricts bringing a claim, for example, a valid statute of limitations, the unfairness and harshness of an absolute date-of-the-exposure limitation destroys a cause of action for an injury which was latent and deteriorating beyond detection. To preclude a remedy before a manifested wrong is assuredly harshness and injustice antithetical to fundamental fairness required by Neb. Const. art. I, § 13. "To require a man to seek a remedy before he knows of his rights, is palpably unjust." *Wilkinson v. Harrington*, 104 R.I. 224, 238, 243 A.2d 745, 753 (1968). Accord *Kennedy v. Cumberland Engineering Co., Inc.*, 471 A.2d 195 (R.I. 1984). To provide against the manifest unfairness in foreclosing or eliminating an injured person's cause of action based on product liability, before that person has a reasonable opportunity to discover existence of the injury and, therefore, know that there is a cause of action, there must be some element of discovery in relation to a latent injury. Discovery of injury assures that a product liability claimant will be able to exercise the constitutional right of access to the courts within a reasonable time after discovery of an injury. Discovery may result from an appropriate medical diagnosis or other suitable information which supplies a reasonable basis for the conclusion that the claimant has sustained an injury, albeit previously latent and undetectable.

Without the element of reasonable discovery, the 10-year limitation, as an absolute and inflexible restriction on a cause of action involving a latent injury to a product liability claimant,

eliminates a cause of action before the cause of action even exists and, without provision for an alternative remedy regarding a latent injury, is a total denial of access to the courts, a violation of the "open courts" guarantee in Neb. Const. art. I, § 13. Other courts, construing the "open courts" guarantee in a state's constitution, have also reached that same conclusion in reference to a cause of action for product liability. See, *Berry By and Through Berry v. Beech Aircraft*, 717 P.2d 670 (Utah 1985); *Kennedy v. Cumberland Engineering Co., Inc., supra*; *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288 (1983); *Lankford v. Sullivan, Long & Hagerty*, 416 So. 2d 996 (Ala. 1982); *Diamond v. E. R. Squibb and Sons, Inc.*, 397 So. 2d 671 (Fla. 1981); *Phillips v. ABC Builders, Inc.*, 611 P.2d 821 (Wyo. 1980); *Overland Const. Co., Inc. v. Sirmons*, 369 So. 2d 572 (Fla. 1979); *Saylor v. Hall*, 497 S.W.2d 218 (Ky. 1973). See, also, *Nelson v. Krusen*, 678 S.W.2d 918 (Tex. 1984) (medical malpractice statute of repose). Cf. *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382, 387 (Ind. 1989):

> [B]ecause of the long latency period with asbestos-related diseases, most plaintiffs' claims would be barred even before they knew or reasonably could have known of their injury or disease and they would be denied their day in court if the ten year statute of repose were applied. To require a claimant to bring his action in a limited period in which, even with due diligence, he could not be aware that a cause of action exists would be inconsistent with our system of jurisprudence.

Today's draconian dictate regarding the absolute 10-year limitation in § 25-224(2) has an impact far beyond injury from exposure to asbestos products.

What about other "toxic torts"—those situations involving toxic substances or other types of products which cause a deleterious condition in a human being or physical deterioration without immediately evident or discernible symptoms? The very real problem in those situations is an injury which is unmanifested until long after a person ceases to use or be exposed to a particular injury-producing substance. Latency of injury may be further complicated if there is a present-day absence of medical or scientific connection

between a substance and the illness or symptoms of the one who used or was exposed to what is eventually determined to be the injury-producing substance. Under those circumstances, evidence to establish a cause-and-effect relationship between the harmful substance and a person's injury is beyond the frontiers of medical knowledge and science. These considerations were likely in the Legislature's mind when it provided the 1981 "asbestos" amendment by § 25-224(5). Concerning that 1981 amendment, the "introducer's statement of intent" includes:

> This statute [§ 25-224(2)] creates an inequitable situation for people who contract cancer or respiratory problems as a result of exposure to asbestos. The debilitating effects of asbestos exposure have been well known for decades. The onset of illness can be more than 20 years removed from the victim's last exposure to the substance. Thus, a person who develops an illness clearly related to asbestos exposure is foreclosed from suit even though there is no real question that the substance caused the malady.

Statement of Intent, L.B. 29, 87th Leg., 1st Sess. In a hearing before the Legislature's Judiciary Committee, one of the cointroducers of the 1981 asbestos amendment succinctly expressed the problem of latent injury and a product liability statute of repose: "To retain that statute of repose is basically to say that a person is just flat out of luck, even though there is no possible way he could have known about his problem in time. That is the basic unfairness of it." Judiciary Committee Hearing, L.B. 29, 87th Leg., 1st Sess. 3 (Jan. 28, 1981). The Legislature passed the asbestos amendment, which expresses a "discovery rule," by a vote of 45 to 0. As attested by today's decision, that legislation, commendable as it is, was clearly too late and much, much too little in reference to "toxic torts."

Outside of asbestos-related injuries, there are other tragic illustrations of substances with long-range health hazards, including disease and death, which occur many years after exposure to or use of the substance. In fact, the deleterious consequences of some substances may be manifested in a subsequent generation. One such colossal catastrophe was the

pharmaceutical diethylstilbestrol (DES), a synthetic compound of the female hormone estrogen. DES was administered to prevent human miscarriage. However, as a consequence unknown at the time of its popularity, but later confirmed by testing, DES causes vaginal adenocarcinoma, a form of cancer, and adenosis, a precancerous vaginal or cervical growth, in daughters of women who ingested the drug during pregnancy. DES' harmful effects are unmanifested during a minimum latency of 10 or 12 years. The effects of DES necessitate surgery to prevent internal spreading of the disease and require biannual examinations with biopsies. "The history of the development of DES and its marketing in this country has been repeatedly chronicled." *Hymowitz v. Lilly & Co.*, 73 N.Y.2d 487, 502, 539 N.E.2d 1069, 1072, 541 N.Y.S.2d 941, 944 (1989). See, also, *Sindell v. Abbott Laboratories*, 26 Cal. 3d 588, 607 P.2d 924, 163 Cal. Rptr. 132 (1980). There are undoubtedly various other pharmaceutical products now on the market which, notwithstanding current scientific investigation and testing, may eventually be determined to be carcinogenic or the cause of other serious injury to the user or the user's offspring.

What about polychlorinated biphenyl (PCB), which is strongly suspected, if not already proved, to be a carcinogen and a cause of birth defects? The countless pesticides and herbicides that are assimilated into the human food chain? Products which are the source of radon contamination? Urea formaldehyde insulation used in the homes of Nebraskans? Lead-based products such as some paint used on children's furniture, such as cribs? The harm and latent effects from some contraceptives, such as the "Dalkon Shield," have already been demonstrated. See *Condon v. A. H. Robins Co.*, 217 Neb. 60, 349 N.W.2d 622 (1984).

In toxic torts, the problem is not a batch of defective 10-year-old tired toasters which may be correctively remodeled for future sale to the public, but the extremely crucial problem of a harmful substance which is incorporated into a human being and frequently lies in wait to visit its devastation on some unsuspecting individual. In that latter circumstance, a product liability statute of repose has no constitutional or moral justification.

Moreover, in the absence of some "discovery" provision in § 25-224(2) regarding injury not immediately detectable, the unnecessarily harsh consequences of today's interpretation of the statute of repose will continue in cases of latent injury and undetected deleterious consequences from use of or exposure to an injury-producing substance. Oliver Wendell Holmes, Jr., observed: "The life of the law has not been logic: it has been experience." The "logic" of a literal interpretation of Nebraska's statute of repose for product liability is defied by the Nebraska Constitution and experience, the quite painful experiences of those who have suffered, and will suffer, latent injury from some product. Meanwhile, with all the injury-producing substances, known or unknown, which have become so much a part of our lives, Mother Nature has to be weeping, especially for those whose cry for redress is unheard in present Nebraska law.